IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

THREE BEARS AVIATION LLC,            *
                                     *
        Plaintiff,                   *
                                     *
        v.                           *
                                     *        CV 624-048
LOCK HAVEN AIRCRAFT SALES,           *
INC., et al.,                        *
                                     *
        Defendants.                  *

U.S DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

SEP 5 2025

FILED

---

## O R D E R

---

Before the Court are Lock Haven Aircraft Sales, Inc. ("Lock Haven"), Steven Kander, and Robert Larsen's (collectively, the "Lock Haven Defendants") motions to dismiss (Docs. 16, 17, 18) and Airstar Flight Support, Inc. ("Airstar") and Brian Williamson's (collectively, the "Airstar Defendants") partial motions to dismiss (Docs. 25, 26). For the following reasons, the Lock Haven Defendants' motions are **GRANTED** as to Counts I, II, III and **DENIED** as to Counts IV, V, VI, VIII, and IX and the Airstar Defendants' motions are **DENIED**.

## I. BACKGROUND

This action arises out of Plaintiff's purchase of a Cessna Citation Jet, registration number N70HW (the "Aircraft"), from Lock Haven. (Doc. 1, at 1.) The Complaint alleges the following. At all relevant times, Kander served as Lock Haven's point of

contact and intermediary for the sale of the Aircraft and Larsen served as president of Lock Haven. (Id. at 2-3.) On or around December 28, 2022, Plaintiff's representative, Hodge, contacted Kander to inquire about purchasing the Aircraft. (Id. at 3.) Hodge and Kander emailed back and forth negotiating purchase terms, and on December 30, 2022, Kander sent an offer, approved by Larsen, which included the following terms: a refundable deposit, a pre-buy inspection and test-flight to be performed by Plaintiff, correction of any "airworthy" discrepancies found during the inspection, and delivery of the aircraft in airworthy condition. (Id. at 4, 17-21.) Hodge indicated the offer was agreeable and informed Kander they would get an agreement in place the following week. (Id. at 4, 17.) During the negotiation discussions, Kander represented that the Aircraft had been operated and maintained at Airstar's facilities throughout Larsen's ownership and provided Hodge the contact information for Airstar's Director of Maintenance, Williamson. (Id. at 4, 19.)

On January 5, 2023, a final agreement was executed for the sale of the Aircraft (the "Agreement"). (Id. at 5, 26-28.) Pertinent to this action are the following terms:

> **4. Pre-purchase Inspection.** After the signing of this Agreement and the payment of the deposit, [Plaintiff] shall have the right to perform a pre-purchase inspection and test flight of the Aircraft. Such inspection shall be at [Plaintiff's] expense and may be performed by an individual(s) of [Plaintiff's] choice, so long as he/she/they hold current Airframe and Powerplant mechanic certificates issued by the Federal

2

Aviation Administration. The inspection shall be performed at Air Star Flight Support, East Georgia Regional Airport, (KSBO), Swainsboro, Georgia. Upon completion of the pre-purchase inspection, [Plaintiff] shall, within two business days, accept the aircraft (with [Lock Haven] agreeing to cure Airworthy discrepancies) or reject the aircraft. Upon [Plaintiff's] acceptance of the aircraft, the deposit in escrow shall become Non-Refundable to [Plaintiff] and become a part of the purchase price.

**5. Aircraft Delivery.** It is agreed that the Aircraft and its logbooks shall be delivered on or before February 3rd, 2023 at the pre-purchase facility. Payment in full, as described above, is a condition of delivery. Title and risk of loss or damage to the Aircraft shall pass to [Plaintiff] at the time of delivery. The Aircraft will be delivered to [Plaintiff] in its present condition, normal wear and tear excepted, with a valid FAA Certificate of Airworthiness. . . .

**6. Warranties.** Except as provided otherwise in this agreement, this Aircraft is sold "AS IS." There are no warranties, either express or implied with respect to merchantability or fitness applicable to the Aircraft or any equipment applicable thereto including warranties as to the accuracy of the Aircraft's logbooks, made by [Lock Haven] except that [Lock Haven] warrants that the Aircraft will be delivered with the appropriate or required Bill of Sale and other title documents and the warranty of title contained in the transferring documents shall survive the closing of the Aircraft. [Plaintiff] agrees that no warranty, except for warranty of title, has been expressed or implied by [Lock Haven] and that [Plaintiff] has inspected the Aircraft and understands that it is being purchased "as is." [Plaintiff] hereby expressly waives any claim for incidental or consequential damages, with the exception of damages related to clear title, including damages resulting in personal injury against [Lock Haven].

. . .

**17. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties. No statements, promises, or inducements made by any party to this Agreement, or any agent or employees of either party, which are not contained in the written contract shall be

3

valid or binding.  This Agreement may not be enlarged, modified, or altered except in writing signed by the parties.

(Id. at 26-28.)  Section 5 was later amended via an addendum to change the delivery date to February 28, 2023.  (Id. at 33.)

Pursuant to Section 4 of the Agreement, Plaintiff elected to have Williamson perform a DOC 10 inspection.  (Id. at 6.)  The DOC 10 inspection is the most comprehensive and extensive inspection, including, among other things, an extensive corrosion inspection and external wing zonal inspection.  (Id. at 6, 39-40.) Williamson's DOC 10 inspection (the "Pre-purchase Inspection") found a few minor cosmetic issues, but concluded the Aircraft was "fully operational, airworthy, and in excellent condition."  (Id. at 6-7, 40.)  Based on the Pre-Purchase Inspection, Plaintiff accepted delivery of the Aircraft on February 20, 2023, and Hodge signed a delivery receipt stating, "[Plaintiff] hereby confirms that [Plaintiff] has fully inspected the Aircraft to its complete satisfaction and, except for the warranty of title in the Agreement and Warranty Bill of Sale delivered contemporaneously herewith, unconditionally accepts the Aircraft **'AS IS'**, **'WHERE IS'**".  (Id. at 6-7, 42.)

Over a year later, in or around April 2024, Textron Aviation, Inc. ("Textron") performed the Aircraft's first regularly scheduled maintenance since Plaintiff's purchase.  (Id. at 7.) Textron removed the wing panels and discovered significant

corrosion, as well as tool marks, indicating someone had previously accessed and discovered the corroded area. (Id.) The corrosion rendered the Aircraft unairworthy, and the estimated cost of repair is $1,100,00.00 with an estimated downtime of 15 to 20 months. (Id. at 7-8.) The extensive systematic corrosion would and should have been discovered during the Pre-Purchase Inspection. (Id.)

Plaintiff asserts claims for breach of contract ("Count I") and breach of the implied covenant of good faith and fair dealing ("Count III") against Lock Haven, and for breach of express warranty ("Count II") against both Lock Haven and Kander. (Id. at 8-10.) Plaintiff also asserts claims for intentional misrepresentation ("Count IV"), fraudulent concealment ("Count V"), negligent misrepresentation ("Count VI"), civil conspiracy to commit fraud ("Count VIII"), and punitive damages ("Count IX") against all Defendants, as well as a negligence claim against the Airstar Defendants ("Count VII"). (Id. at 10-14.) On September 16, 2024, the Lock Haven Defendants each filed motions to dismiss the claims brought against them. (Docs. 16, 17, 18.) Plaintiff responded to each motion (Docs. 38, 39, 40) and the Lock Haven Defendants each replied (Docs. 49, 50, 51). Additionally, on September 19, 2024, the Airstar Defendants filed partial motions to dismiss Counts IV, V, VI, and VIII. (Docs. 25, 26.) Plaintiff responded to both motions. (Docs. 42, 43.) Defendants' motions are now ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 679. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will

support the cause of action." <u>Marshall Cnty. Bd. Of Educ. v.</u> <u>Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) (citing <u>Exec. 100, Inc. v. Martin Cnty.</u>, 922 F.2d 1536, 1539 (11th Cir. 1991)). Allegations in a complaint must be taken as true and "read . . . in the light most favorable to the plaintiffs." <u>Duke</u> <u>v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).

"Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>see</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (alterations adopted) (citation and internal quotation marks omitted)). To survive a defendant's Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include enough factual allegations "to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 555. Although a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> The Rule 8 pleading standard "demands more than an unadorned, the-defendant unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). At this stage, the Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable

to the plaintiff.  <u>Hoffman-Pugh v. Ramsey</u>, 312 F.3d 1222, 1225
(11th Cir. 2002).

### III. DISCUSSION

The Court analyzes the motions to dismiss as to each Count.

**A. Counts I and III: Breach of Contract & Breach of the Implied Covenant of Good Faith and Fair Dealing Against Lock Haven**

Lock Haven moves to dismiss Counts I and III, arguing both claims fail because Plaintiff has not pled Lock Haven breached the Agreement. (Doc. 16, at 8-13.) As a preliminary matter, the Court must determine the law governing the Agreement.  Because this case was filed in Georgia, the Court looks to Georgia's choice of law requirements.  "Absent a contrary public policy, [Georgia courts] will normally enforce a contractual choice of law clause." <u>Carr v. Kupfer</u>, 296 S.E.2d 560, 562 (Ga. 1982) (citations omitted). Here, Pennsylvania law applies because the Agreement contains the following choice of law provision: "This Agreement is a contract executed under and to be construed under the laws of the State of Pennsylvania."  (Doc. 1, at 28.)  Lock Haven and Plaintiff agree the Agreement should be construed in accordance with Pennsylvania law.  (Doc. 16, at 7; Doc. 38, at 4.)

Under Pennsylvania law, the elements of a claim for breach of contract are: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant

8

damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016). Where, as is undisputed here, a valid contract exists, "Pennsylvania contract law begins with the firmly settled principle that the intent of the parties to a written contract is contained in the writing itself." Phillips Feed Serv., Inc. v. Freshpet, Inc., No. 5:22-CV-01393, 2025 WL 834749, at *7 (E.D. Pa. Mar. 17, 2025) (quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009) (internal quotations omitted)). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract such as extrinsic aids or evidence." Id. Moreover, courts "must give effect to all [of a contract's] provisions," and "will not interpret one provision of a contract in a manner which results in another portion being annulled." MBC Dev., LP v. Miller, 316 A.3d 51, 64 (Pa.), cert. denied, 145 S. Ct. 548 (2024) (citations omitted).

Lock Haven argues Plaintiff's breach of contract claim fails because the Agreement did not contain a general guaranty of airworthiness but, rather, contained strong warranty disclaimers. (Doc. 16, at 8-12.) It contends any obligations to cure airworthiness deficiencies were limited to discrepancies Plaintiff discovered during the Pre-Purchase Inspection. (Id. at 12.) In support, Lock Haven points to the placement and context of the

9

curative provision in the Agreement and the Agreement's overall risk allocation. (Id. at 8-11.) Plaintiff argues Lock Haven breached the Agreement by not disclosing the corrosion because the Agreement contained independent obligations to deliver the Aircraft in airworthy condition and to deliver a valid FAA Certificate of Airworthiness. (Doc. 38, at 3-11.) More specifically, Plaintiff argues under Pennsylvania contract law the Agreement's express warranty of airworthiness trumps the "as is" warranty disclaimer and, to the extent the Agreement is ambiguous, the Court may consider the pre-contract communications between Kander and Hodge to determine the Parties' intent. (Id.) In reply, Lock Haven argues Plaintiff's interpretation of the Agreement is flawed, the Agreement is not ambiguous, and Plaintiff has not pled any facts that support finding the FAA Certificate of Airworthiness was invalid. (Doc. 49, at 3-10.)

In arguing there was no express warranty of airworthiness, Lock Haven relies on McMahan Jets, LLC v. Roadlink Transp., Inc., 68 F. Supp. 3d 817 (W. D. Tenn. 2014) and Pissed Away N6VC, LLC v. Stricker, No. 2:11-CV-04278, 2012 WL 393418 (W.D. Mo. Feb. 6, 2012). (Doc. 16, at 8-12.) Though these cases apply Tennessee and Washington contract law, respectively, the decisions are nonetheless guiding to the Court, and a review of the contract interpretation principles of these jurisdictions reveals that they largely mirror Pennsylvania's. Both cases involved breach of

contract claims for airworthiness issues discovered well after the purchase, requiring the courts to interpret aircraft purchase agreements like the one at issue here. See Pissed Away, 2012 WL 393418, at *1; McMahan, 68 F. Supp. 3d at 822. In McMahon, the contract contained a provision requiring the seller to deliver the aircraft in compliance with all airworthiness requirements; then, upon delivery the buyer was to inspect the aircraft and based on its findings, accept or reject it. 68 F. Supp. 3d at 822. The contract contained an "as is" warranty disclaimer. Id. The Court relied on the context and proximity of the mentions of airworthiness to the pre-purchase inspection obligations, references to the pre-purchase inspection in the warranty disclaimer clause, and overall risk allocation to conclude there was no express warranty of airworthiness and the seller was only responsible for curing airworthiness deficiencies discovered in the pre-purchase inspection. Id. at 829.

Similarly, in Pissed Away, the buyer's acceptance of the aircraft was contingent on its inspection, and, after acceptance, the seller would complete an annual inspection to ensure flight worthiness. 2012 WL 393418, at *1. The contract included an as is warranty clause and a disclaimer of "any implied warranty of airworthiness." Id. at *4. The court dismissed the buyer's claim for later discovered issues with the aircraft's condition holding that, "[t]he clear intent of parties in contracting for inspection

11

and acceptance—with a disclaimer of airworthiness and 'as is' clause—was to avoid claims such as this one." Id. The Court finds the provisions of the Agreement materially similar to the contracts in McMahon and Pissed Away and, accordingly, follows those courts in interpreting the Agreement as showing a clear intent to place the risk of airworthiness issues discovered outside of the pre-purchase inspection — and many months after purchase — on Plaintiff.

But, regardless, basic contract interpretation leads us to the same result. To start, the sole time the word "Airworthy" appears in the Agreement is within the term titled "Pre-purchase Inspection," which states that after the inspection Plaintiff has the choice to "accept the Aircraft (with [Lock Haven] agreeing to cure Airworthy *discrepancies*)," or reject it. (Doc. 1, at 26 (emphasis added).) Beyond its placement within the Pre-Purchase Inspection term, the use of the word "discrepancies" further highlights that this curative provision applies only to issues discovered *by Plaintiff* during the inspection. Moreover, the Agreement includes a clear "as is" warranty disclaimer that references the Pre-Purchase Inspection, evidencing an intent to place the risk of later discovered issues with the Aircraft on Plaintiff. (Id. at 27.) Reading these terms harmoniously, as is required under Pennsylvania law, the Agreement is clear: Plaintiff was to inspect the Aircraft and, if Plaintiff chose to accept it,

Lock Haven would cure any issues discovered by Plaintiff during the inspection and brought to Lock Haven's attention; beyond that, the Aircraft would be delivered "as is." (See id. at 26-27.) The Court does not find these terms ambiguous or contradictory. And while under Pennsylvania law an express warranty of airworthiness would trump a general "as is" disclaimer, the Court declines to read into the Agreement an express warranty of airworthiness where there is not one. See Silver v. Porsche of the Main Line, No. 1057 EDA 2014, 2015 WL 7424848, at *5-6 (Pa. Super. Ct. Mar. 10, 2015) (holding that the words "as is" disclaim implied, but not express warranties).

Plaintiff further argues that even if the Agreement did not include an express warranty of airworthiness Lock Haven breached the Agreement because it can be inferred from the alleged corrosion that the Aircraft was not properly maintained, rending the FAA Certificate of Airworthiness invalid. (Doc. 38, at 5-6.) Indeed, if the Aircraft was not maintained in compliance with FAA requirements, the FAA Certificate of Airworthiness would be invalid, giving rise to a potential breach of contract claim. See Munich v. Columbia Basin Helicopter, Inc., No. 2:13-CV-906, 2016 WL 4500778, at *6-7 (D. Or. Aug. 26, 2016) (holding that under 14 C.F.R. § 21.181, noncompliance with certain FAA regulations renders FAA Certificates of Airworthiness invalid). However, Plaintiff fails to make any allegations in the Complaint to support

13

its contention that the Aircraft was not maintained in compliance with FAA regulations. (See Doc. 1.) Rather, it asks the Court to take a large analytical leap and infer the Aircraft was not properly maintained for many months, if not years, prior to the purchase based solely on its allegation that the corrosion should have been discovered during the Pre-Purchase Inspection. (Doc. 38, at 5-6.) Meanwhile, the word "maintenance" is completely absent from the Complaint, as are any allegations at all relating to the FAA Certificate of Airworthiness's validity. (See Doc. 1.) The Court declines to read these allegations into the Complaint or to draw inferences from facts not pled. Thus, Lock Haven's motion to dismiss Count I for breach of contract is **GRANTED**.

Relatedly, it is undisputed that Count III, asserting a claim for breach of the implied covenant of good faith and fair dealing, rises and falls with Plaintiff's breach of contract claim. (Doc. 16, at 13; Doc. 38, at 10-11.) Thus, because Plaintiff fails to state a claim for breach of contract, it likewise fails to state a claim for breach of the covenant of good faith and fair dealing. See RS Auto Parts, Inc. v. National Grange Mut. Ins. Co., 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) (holding that, under Pennsylvania law, "a claim for breach of a covenant of good faith and fair dealing may not be maintained as an independent cause of action separate from the breach of contract claim" (citation omitted)). Lock Haven's motion to dismiss Count III is therefore **GRANTED**.

14

**B. Count II: Breach of Express Warranty Against Lock Haven and Kander**

Count II of the Complaint asserts a claim against Lock Haven and Kander for breach of express warranty based on statements made in the pre-purchase agreement and the Agreement that the Aircraft would be delivered in airworthy condition. (Doc. 1, at 8-9.) Lock Haven and Kander argue this claim should be dismissed because the Agreement did not contain an express warranty of airworthiness and under the Agreement's merger clause no outside statements can form the basis for recovery.[1] (Doc. 16, at 12-13; Doc. 17, at 8.) Plaintiff argues its breach of express warranty claim should continue on because under Pennsylvania law an "as is" contract provision does not negate an express warranty contained in the same. (Doc. 38, at 11-12; Doc. 39, at 5-6.)

First, as to any statements made in the pre-purchase agreement, the Court finds they cannot form the basis of Plaintiff's breach of express warranty claim in light of the Agreement's merger clause which reads, "No statements, promises, or inducements made by any party to this Agreement, or any agent or employees of either party, which are not contained in the written contract shall be valid or binding." (Doc. 1, at 28);

---

[1] Kander also argues this claim should be dismissed against him because he was not a "seller," and therefore cannot be liable for a breach of warranty claim under the Pennsylvania Commercial Code. (Doc. 17, at 8.) Plaintiff disagrees, arguing whether he can be considered a seller depends on the nature and duration of his relationship with Lock Haven. (Doc. 39, at 4-5.) Because the Court finds Plaintiff fails to state a breach of express warranty claim, the Court does not address the merits of this argument.

Banks v. Hanoverian, Inc., No. 2807, 2006 WL 689106, at *3 (Pa. Com. Pl. Mar. 10, 2006) ("To allow parole evidence that the Defendants made representations regarding the condition of the property, where the contract specifically states that Plaintiff agreed that no such representations were made or were to be relied upon, would render the contract obsolete.")    Second, as to statements contained in the Agreement, for the reasons stated above, the Court finds there was no express warranty of airworthiness in the Agreement.    To the contrary, it contained a clear "as is" warranty disclaimer, stating "no warranty, except for warranty of title, has been expressed or implied."    (Doc. 1, at 27.)    Thus, Lock Haven and Kander's motions to dismiss Count III are **GRANTED**.

**C. Counts IV, V, and VI: Intentional Misrepresentation, Fraudulent Concealment, and Negligent Misrepresentation Against All Defendants**

Turning to the underlying tort claims, the Court again must first determine the applicable law.    "Under Georgia's choice of law rules, tort claims such as Plaintiff's [fraud-based claims], are governed by the substantive law of the place of the wrong, or lex loci delicti."    Demere v. Newlin, No. CV 405-091, 2005 WL 8156280, *12 n.15 (S.D. Ga. Aug. 30, 2005) (citing Ohio S. Express Co. v. Beeler, 140 S.E.2d 235, 236 (Ga. Ct. App. 1965)).    Generally, "[t]he place of the wrong is the place where the injury

16

sustained was suffered." Id. (citations omitted). When the injury
is economic, as is the case here, the place of the wrong is the
state of the claimant's residence. Id. (citing Int'l Bus. Mach.
Corp. v. Kemp, 536 S.E.2d 303, 307 (Ga. Ct. App. 2003); Velten v.
Lippert, 985 F.2d 1515 (11th Cir. 1993)). Thus, the Court applies
the law of Plaintiff's state of residency, Oregon.[2] (Doc. 1, at
2.)

Under Federal Rule of Civil Procedure 9(b), "a party must
state with particularity the circumstances constituting fraud."
To do so, the plaintiff must allege:

> (1) precisely what statements were made in what
> documents or oral representations or what omissions were
> made, and (2) the time and place of each such statement
> and the person responsible for making (or, in the case
> of omissions, not making) same, and (3) the content of
> such statements and the manner in which they misled the
> plaintiff, and (4) what the defendants obtained as a
> consequence of the fraud.

U.S. ex rel. Clausen v. Lab'y Corp. of Am., 290 F.3d 1301, 1310
(11th Cir. 2002) (citation omitted). As to the elements of the
specific claims asserted, under Oregon law, the essential elements
of a claim for fraud are:

> (1) a representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of its falsity
> or ignorance of its truth; (5) his intent that it should
> be acted on by the person and in the manner reasonably
> contemplated; (6) the hearer's ignorance of its falsity;
> (7) his reliance on its truth; (8) his right to rely
> thereon; (9) and his consequent and proximate injury.

---

[2] Though the Court applies Oregon law, the Parties agree the outcome would be
the same under the laws of Pennsylvania and Georgia. (Doc. 16, at 14-16; Doc.
17, at 14-16; Doc. 18, at 9; Doc. 25, at 4, n.3; Doc. 26, at 4 n.3; Doc. 38, at
13-17; Doc. 39, at 13-17; Doc. 40, at 4-9; Doc. 42, at 4-9; Doc. 43, at 4-9.)

U. S. Nat'l Bank of Or. v. Fought, 630 P.2d 337, 348 (Or. 1981) (citation omitted). To state a claim for negligent misrepresentation, "the parties must be in a 'special relationship,' in which the party sought to be held liable had some obligation to pursue the interests of the other party." Ave. Lofts Condominiums Owners' Ass'n v. Victaulic Co., 24 F. Supp. 3d 1010, 1018 (D. Or. 2014) (citation omitted). The requisite special relationship "does not exist in a business transaction in which 'adversarial parties negotiat[e] at arm's length to further their own economic interests.'" Id. (quoting Onita Pac. Corp. v. Trs. of Bronson, 843 P.2d 890, 897 (Or. 1992)). Notably, reasonable reliance is an essential element of a fraud-based claim whether it is based on intentional conduct or negligence. See Toucan Scan, Inc. v. Hell Graphics Sys., Inc., No. CIV. 91-1171, 1993 WL 74891, at *7-8 (D. Or. Mar. 8, 1993) (finding lack of reasonable reliance fatal to fraud and negligent misrepresentation claims); Nettleton v. Exact Scis. Corp., 645 F. Supp. 3d 1049 (D. Or. 2022), aff'd, No. 23-35399, 2024 WL 3579334 (9th Cir. July 30, 2024).

1.  **Lock Haven Defendants' Statements in Pre-Purchase Agreement and the Agreement**

The Lock Haven Defendants first argue Plaintiff's claims against them for intentional misrepresentation, fraudulent concealment, and negligent misrepresentation should be dismissed

because, except for statements contained in the attached documents, Plaintiff fails to adequately identify which Defendants made which statements as is required under Rule 9(b). (Doc. 16, at 14; Doc. 17, at 13-14; Doc. 18, at 8.) Larsen further argues there are no allegations that he made any statements at all. (Doc. 18, at 8.) In response, Plaintiff points to the specific statements alleged in the Complaint that its fraud-based claims rest on. (Doc. 38, at 14.) The statements Plaintiff points to are included in the attached documents; namely, in the Agreement, the addendum, and in Kander's emails to Hodge. (Id.; Doc. 39, at 16.) As to Larsen, Plaintiff points to Kander's statements in the emails, and its allegations that Larsen approved the proposed offer and, in essence, communicated through Kander as his superior. (Doc. 40, at 5-6.) Because the Complaint not only identifies specific statements but also attaches copies of them, Plaintiff has sufficiently pled the statements its fraud-based claims rest on.

The Lock Haven Defendants next argue Plaintiff cannot show reasonable reliance on their statements as a matter of law. (Doc. 16, at 14-17; Doc. 17, at 13-17; Doc. 18, at 9-16.) In response, Plaintiff argues reasonable reliance is a question of fact and the Lock Haven Defendants had a duty to disclose the corrosion under Pennsylvania and Georgia law though, notably, does not aver such duty exists under Oregon law. (Doc. 38, at 16-17; Doc. 39, at 17;

Doc. 40, at 8-9.) In light of the Agreement's merger clause, the Court finds Plaintiff could not have reasonably relied on any statements made by the Lock Haven Defendants' outside of the Agreement. See Nettleton, 645 F. Supp. 3d at 1057 (granting motion to dismiss fraud claims because reliance on statements made outside of a contract with a clear and unambiguous supersession clause was unreasonable); Toucan, 1993 WL 74891, at *8 (finding reliance on statements outside of contract unreasonable and unjustified in light of the contract's disclaimer of any representations or agreements outside of the contract itself). Plaintiff also argues there is a question of fact as to reasonable reliance despite the merger clause because of contradictory provisions in the Agreement. (Doc. 38 at 17.) However, for the reasons already stated, the Court finds there are no contradictory provisions in the Agreement.

As to a duty to disclose because of superior knowledge, Plaintiff rests this argument solely on Georgia and Pennsylvania law, despite representing that the underlying claims are governed by Oregon law. (Doc. 40, at 4, 7-8.) Because the Court finds Oregon law applicable, Plaintiff's argument is unpersuasive. Indeed, under Oregon law Plaintiff fails to state a claim for negligent misrepresentation as to the Lock Haven Defendant's statements based on the very nature of the Parties' relationship. Victaulic Co., 24 F. Supp. 3d at 1018. And, in any event, the

Court finds the Lock Haven Defendants did not possess superior knowledge because the corrosion was not difficult for Plaintiff to discover through the exercise of ordinary prudence and caution. In fact, Plaintiff alleges the corrosion would and should have been discovered by the Pre-purchase Inspection which, under the terms of the Agreement, Plaintiff had the right to have performed by a certified mechanic of its choosing prior to accepting the Aircraft. (Doc. 1, at 7, 26.)  Thus, to the extent Plaintiff's fraud-based claims rest on the Lock Haven Defendants' statements, those claims fail as a matter of law.  Nonetheless, because, for the reasons discussed below, Plaintiff sufficiently alleges a conspiracy among Defendants, the Airstar Defendants' statements may be attributed to the Lock Haven Defendants.

   2. Statements Made by the Airstar Defendants Regarding the Pre-Purchase Inspection

   The Airstar Defendants also argue the claims for intentional misrepresentation, fraudulent concealment, and negligent misrepresentation should be dismissed as to any statements made by them because the claims fail to meet Rule 9(b)'s heightened pleading standard.  (Doc. 25, at 5-7; Doc. 26, at 5-7.) Specifically, they argue Plaintiff failed to identify the exact statements its fraud claims are based upon or that it relied on these statements.  (Id.)  Plaintiff argues it met Rule 9(b)'s

pleading standard.   (Doc. 38, at 18; Doc. 39, at 18; Doc. 40, at 9-10.)

The Court agrees with Plaintiff.  As explained above, to meet Rule 9(b)'s heightened pleading standard, the Complaint should identify, with particularity, "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud." ADA v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (citation omitted).  The Complaint alleges the Pre-Purchase Inspection included a review of the corroded area, identifies tool markings in the corroded area, and provides copies of specific statements – with the time and date — made by Williamson and Airstar in which they failed to disclose the corrosion and misrepresented to Plaintiff that the Aircraft was "fully operational, airworthy, and in excellent condition." (Doc. 1, at 6-7, 10-12, 35-37, 39-40.)  Plaintiff further alleges it purchased the Aircraft based on the Pre-Purchase Inspection findings that the Aircraft was airworthy, thus providing a financial benefit to Defendants, and now, as a result, Plaintiff faces $1,100,000 in repair costs.  (Id. at 6-7.)  Based on these allegations, the Court finds Plaintiff has pled its fraud-based tort claims as to the Pre-Purchase Inspection findings with

sufficient particularity, and Defendants' motions to dismiss counts IV-VI are **DENIED**.

### D. Count VIII: Civil Conspiracy Against All Defendants

Defendants argue the civil conspiracy claim should be dismissed because all substantive and independent claims against them fail. (Doc. 16, at 18; Doc. 17, at 17; Doc. 18, at 16; Doc. 25, at 4-5; Doc. 26, at 4-5.)   Indeed, a civil conspiracy is not an independent tort under Oregon law but, rather, requires an underlying tort. See Osborne v. Fadden, 201 P.3d 278, 282 (Or. Ct. App. 2009) ("[Civil conspiracy] is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators.")  However, for the reasons discussed above, Plaintiff pled sufficient facts to support claims for intentional misrepresentation, fraudulent concealment, and negligent misrepresentation based on the Air Star Defendants' statements in the Pre-Purchase Inspection.   And when engaged in a civil conspiracy, evidence against each defendant is imputed to the others.  Id. at 284.  Thus, if Plaintiff has adequately pled the Lockhaven Defendants engaged in a civil conspiracy with the Airstar Defendants, the Lock Haven Defendants may too be liable for the Pre-Purchase Inspection's misrepresentations and concealment.

Turning to whether Plaintiff has sufficiently pled a civil conspiracy, the requisite elements are: "(1) [t]wo or more persons;

23

(2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." Id. at 282 (internal quotations, alterations, and citations omitted). To support Plaintiff's conspiracy claim, the Complaint alleges the Lock Haven Defendants and Airstar Defendants worked together in a common scheme to misrepresent the condition of the Aircraft and conceal the extensive corrosion in the wing spar area. (Doc. 1, at 13-14.) Because the conspiracy alleged is a fraud-based claim Plaintiff "must state with particularity the circumstances constituting fraud or mistake." See Wright v. JPMorgan Chase Bank, N.A., No. 1:11-CV-4422, 2012 WL 13012809, at *6 (N.D. Ga. Aug. 1, 2012), report and recommendation adopted Wright v. JP Morgan Chase Bank, No. 1:11-CV-4422, 2012 WL 13013632 (N.D. Ga. Sept. 13, 2012) (citing FED. R. CIV. P. 9(b); United States v. Lab. Corp. of Am. Inc., 290 F.3d 1301, 1310 (11th Cir. 2002)). And, for the reasons stated above, Plaintiff has done so.

As to a meeting of the minds, Plaintiff alleges the Lock Haven Defendants and Aircraft Defendants had a pre-existing business relationship where Airstar operated and performed all required maintenance on the Aircraft for the duration of Lock Haven's ownership. (Doc. 1, at 4.) Additionally, it alleges the Pre-purchase Inspection completed by Airstar would have included an inspection of the corroded area and that there were signs of tool

marks and tampering in the area suggesting the corrosion had been discovered prior to Textron's later inspection of the area. (Id. at 4, 7.)   Taking these allegations as true, the combined circumstances are sufficient to infer the Lock Haven Defendants and Airstar Defendants were all aware of the corrosion and acted together to conceal and misrepresent the Aircraft's condition in the Pre-Purchase Inspection.   Namely, Defendants' pre-existing relationship, their exclusive control over the Aircraft prior to its sale, and the markings indicating the corrosion had been discovered sometime prior to Textron's inspection support this theory.   (Id. at 7.)   And finally, regarding damages, Plaintiff alleges the Defendants' scheme to present false Pre-Purchase Inspection findings induced Plaintiff to purchase the Aircraft and, as a result, be faced with repair costs of $1,100,000.00 and significant downtime.   (Id.)   Thus, Plaintiff has sufficiently pled a claim for civil conspiracy to commit fraud against all Defendants.

**E. Count IX: Punitive Damages Against Lock Haven and Kander**

Turning to Plaintiff's claim for punitive damages, the Lock Haven Defendants argue this claim should be dismissed against them because Plaintiff fails to state any underlying claims against them.   (Doc. 16, at 18; Doc. 17, at 18; Doc. 18, at 17.)   Because the Court finds Plaintiff's fraud-based claims shall not be

dismissed, the Lock Haven Defendants' motions to dismiss Plaintiff's claim for punitive damages is **DENIED**.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Lock Haven Defendants' motions to dismiss (Docs. 16, 17, 18) are **GRANTED IN PART AND DENIED IN PART** and the Airstar Defendants' motions to dismiss (Docs. 25, 26) are **DENIED**. Plaintiff's claims for breach of contract (Count I), breach of express warranty (Count II) and breach of the covenant of good faith and fair dealing (Count III) are **DISMISSED**. Plaintiff's remaining claims may proceed.

**ORDER ENTERED** at Augusta, Georgia, this 5th day of September, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA